UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Moscot.com LLC**, <br><br>    Plaintiff; <br><br> v. <br><br> **August Image, LLC**, <br><br>    Defendant. | Case No. 1:23-cv-4457 <br><br><br> **Complaint** |

Plaintiff Moscot.com LLC ("Moscot"), for its Complaint against Defendant August Image, LLC ("August"), demands a trial by jury on the following allegations:

**Summary**

1. Moscot is a family-owned eyewear business specializing in optical frames and sunglasses. It sells products through <www.moscot.com> (the "Website"), which includes a marketing blog called Moscot Moments (the "Blog").

2. In January 2023, a member of Moscot's marketing team discovered three photographs of celebrities Brendan Fraser and Ke Huy Quan wearing Moscot's frames (the "Photos"). Excited to see celebrities wearing the company's brand, they posted the Photos on the Blog and included small versions of two of the images in a marketing email.

3. However, in early March, Moscot removed the photos from the Blog after it was contacted by a publicist for Brendan Fraser. Moscot made no further use of the Photos thereafter.

4. August claims to be an image licensing company and the "exclusive administrator, licensing agent, and syndicator" of the Photos. However, upon information and belief, August rarely licenses images prospectively, is really a serial litigant with a business model built on threatening claims for statutory damages and attorney's fees, and may not even own the necessary exclusive rights to maintain copyright infringement actions.

5. On March 24, August sent Moscot an email with the subject "Unauthorized use of images/ Danielle Levitt" attaching old screenshots showing the Photos as they had been used on the Blog and in the marketing email.

6. Moscot responded to August that the images had already been taken down, but August nevertheless demanded a payment of $16,000. August claimed that a license fee for a single use of the images would have been approximately $6,000 – $10,000 but included a substantial additional charge for using the images without authorization.

7. Moscot attempted to negotiate the license amount and asked for evidence of comparable license agreements. However, August did not provide that evidence. Instead, it hired attorney Stephen Doniger.

8. On April 26, Doniger sent Moscot a template cease and desist letter, which was not well tailored to the facts of the case. For example, it demanded Moscot cease using the photos even though it had already done so and contained a typo in one of the very few places that was specific to Moscot (referring to "moscow.com").

9. Doniger and Moscot's attorney had a brief phone call to discuss settlement. After a follow-up email from Moscot, Doniger sent a short reply demanding $27,000 to settle.

10. Moscot was taken aback by the 69% increase from the original demand, which already included substantial penalties for unlicensed use. Moscot replied with a detailed email explaining its position and offering to pay the full $16,000 originally requested by August.

11. Doniger rejected this offer in another terse email and did not explain the basis for the 69% increase.

12. Moscot attempted, yet again, to reach a reasonable settlement by offering to pay $20,000: $16,000 based on the original demand, plus $4,000 for attorney's fees. This was more than reasonable given the minimal time spent by Doniger in preparing the form letter, taking the phone call, and writing several terse emails. Indeed, several recent cases awarded less in fees to August or a Doniger client for the filing of a complaint and a motion for default judgment on copyright infringement claims.

13. But Doniger rejected the offer: "Thank you. I just spoke with my client and have absolute bottom-line authority at $24k. If you can get that done I will write it up."

14. While a bitter pill to swallow, Moscot just wanted to end the matter. It offered to give August everything it originally asked for, and more. An $8,000 license fee doubled to $16,000 for unauthorized use, plus $4,000 for the template cease and desist letter, phone call, and short emails.

15. August's rejection of this offer and failure to provide any justification for its increased demand, or any evidence of comparable licensing agreements, is unreasonable and abusive. While Moscot is willing to accept responsibility for a mistake and is updating its policies to prevent a recurrence, it objects to August and Doniger's extortionary tactics.

16. The true cost of licensing celebrity photos in similar circumstances is typically hundreds of dollars and well below that claimed by August. For example, Getty Images offers licenses for celebrity portraits taken by Danielle Levitt. A portrait of Peter Gallagher by Levitt can be licensed for three months for use on a commercial blog for $110, or for a single marketing email with a circulation up to 100,000 users for $1,590. Those prices are *before* any discounts, which are typically substantial when dealing with similar images from the same photoshoot used for related purposes.

17. Moscot tried in good faith to negotiate a reasonable settlement, and ultimately offered a windfall just to make the matter go away. But August does not know how to take a win, and its greed may cost it more in the end.

18. Indeed, August may not even own the rights necessary to maintain a copyright infringement action on the Photos. If August is merely the "agent" of Danielle Levitt and does not own the necessary exclusive rights in her photos—as appears to be the case with other August photographers—then it cannot maintain a copyright claim against Moscot for the Photos.

19. Moscot seeks a declaratory judgment determining (1) whether Moscot is liable to August for copyright infringement, including whether August owns the exclusive rights in the Photos necessary to maintain an infringement claim; (2) that Moscot's conduct does not qualify as willful infringement; (3) that August's damages, if any, do not exceed $10,000. Moscot also seeks its attorney's fees in this matter pursuant to 17 U.S.C. § 505, as August necessitated this action through its unreasonable and extortionate tactics.

## Parties

20. Plaintiff Moscot.com LLC is a New York limited liability company with its principal place of business at 94 Orchard Street, New York, New York 10002.

21. Defendant August Image, LLC is a New York limited liability company with its principal place of business at 793 Broadway, 2nd Floor, New York, New York 10003.

## Jurisdiction and Venue

22. The Court has original subject matter jurisdiction because Moscot's claims arise under or require construction of the Copyright Act, and Federal Courts have original, exclusive jurisdiction over actions arising under the Copyright Act per 28 U.S.C. § 1338(a).

23. The Court has general personal jurisdiction over August because it is a New York limited liability company with its principal place of business in New York. C.P.L.R. 301.

24. Venue is proper under the general venue statute applicable to declaratory judgment actions because August (1) is located in this district and (2) a substantial part of the events or omissions giving rise to the claim occurred in this district. 28 U.S.C. § 1391(b).

## Facts

**A. The Photos**

25. On or around January 10, 2023, The Hollywood Reporter published photos of Brendan Fraser, Ke Huy Quan, and several other celebrities. These were standard portrait photographs, taken against a maroon background at the same photoshoot, and attributed to Danielle Levitt.

26. These included the Photos, which consisted of (1) Brendan Fraser sitting at a table; (2) Ke Huy Quan sitting on a stool; and (3) Fraser, Quan, and several other celebrities in a group.

27. In each of the Photos, Fraser and Quan were wearing Moscot eyeglass frames.

### B. Moscot's Use

28. In January 2023, Moscot's marketing team discovered the Photos online.

29. Excited by celebrities wearing Moscot's eyewear, and under the belief that the images could be publicly shared, a member of Moscot's marketing team posted them on the Blog and used two of the images in a marketing email sent to customers on its mailing list.

30. In early March, Moscot was contacted by Brendan Fraser's publicist and told that it was not authorized to use his images. Moscot promptly removed the Photos from its Blog and made no further use of them.

31. Moscot is currently reviewing its copyright policies to ensure compliance with the law and that it follows best practices for licensing images in the future.

### C. August Image

32. August is nominally an "image research, clearances & licensing" company focused on "celebrity, lifestyle, beauty, and fashion" photography.

33. Upon information and belief: August (1) rarely licenses images prospectively; (2) is a serial litigant with a business model built on threatening claims for statutory damages and attorney's fees; (3) maintains a nominal licensing business with inflated rates to justify excessive copyright demands; and (4) may not actually own the exclusive rights necessary to maintain copyright infringement actions. This belief is based on the following facts.

34. August maintains a dated and poorly functioning website. For example, the website's privacy policy statement was last updated 16 years ago, while the Content License Agreement was last updated 7 years ago. Although the site has an image gallery where users can (supposedly) explore photos for licensing, basic functions such as clearing or resetting filters do not work properly.

35. August's website does not display pricing information publicly and requires users to register to access basic functions and content. However, August purposefully limits registrations by requiring manual approval.

36. August's website is littered with references to copyright enforcement. The bottom bar prominently states "[i]f you received a notice of copyright infringement, click here for more information"; the "About" page refers to four copyright enforcement partners; the dedicated "Copyright Compliance" page refers to six copyright enforcement partners; and even the user registration page states the following just above the submit button, "[w]e take copyright protection of our artists' work seriously. If you have received a letter from one of our copyright partners please contact them directly to resolve the matter."

37. August's Content License Agreement does not provide a full license to use the photographs. It states "[y]ou acknowledge that AUGUST does not convey any permissions, permits, clearances, releases or other rights related to the persons, entities, private properties, products, trademarks or brands depicted in the Content ('Releases'), and You are solely responsible for obtaining any and all such Releases." But licenses to celebrity photos— August's principal market—have limited value and utility without the necessary releases.

38. August's extortionate settlement tactics are inconsistent with a business that is focused on prospective licensing and seeking to build relationships with repeat customers.

39. August does not register for copyrights on photos as they are published, but often takes months or years to do so. Upon information and belief, August does not spend the time or money registering photos unless infringement is detected or anticipated, even though it claims to license individual photos for thousands of dollars.

40. August regularly files generic form Complaints against alleged infringers that are not tailored to the specific photos or conduct in question.

41. August files generic declarations in support of default judgments that are not tailored to the specific photos or conduct in question. Typically, these have unsupported and self-serving statements that a prospective license would have been approximately $2,500. In one instance, August filed a declaration without a signature and did not correct it. In another, August claimed that "sample" license agreements were attached, but they were not.

42. August is currently facing a serious unresolved challenge in another lawsuit regarding its ownership and standing to assert copyright claims as the mere "agent" of one of its long-time photographers.

43. One publicly filed agreement with an August photographer makes clear that the photographer, not August, maintains ownership of the copyright: "The parties acknowledge and agree that all right, title and interest in and to your works, including but not limited to copyright therein, shall be owned solely, in perpetuity, in any and all media, and throughout the world, by you."

44. Without the underlying photographer agreement and information regarding the circumstances under which the Photos were taken and licensed, Moscot does not know whether August has a sufficient ownership interest to maintain the threatened copyright claims.

### D. August's Demand

45. On March 24, after Moscot had already removed the Photos, Lauren Kelly, an August representative, sent Moscot an email with the subject line "Unauthorized use of images/ Danielle Levitt." Kelly claimed that Levitt was "our artist," and, notwithstanding the clear allegation in the subject line, disingenuously asked Moscot to "please confirm that your team received permission to use these images attached, and … provide documentation of this approval so that our records can be updated accordingly."

46. On March 28, Moscot responded by apologizing and noting that the images had been "removed from our site/email."

47. On March 28, Kelly replied: "[w]hile we appreciate the removal of the images, we're going to have to request unauthorized use fees. The images are registered timely with the USCO, but instead of wasting everyone's funds on legal fees, we prefer to offer you a discounted fee of $16,000 to settle this directly. Please advise when you are able to review."

48. During a subsequent call, Kelly justified August's demand by explaining that it would have licensed the Photos for $6,000 – $10,000 but included an additional fee since the images had been used without permission.

49. On April 4, Moscot's attorney wrote to Kelly objecting to the demand based on the nature of the use and requested proof of "licensing fees paid by third parties for the

same photograph, [so] we can at least have support to go back to Moscot and advocate for a number approaching the bottom end of the range of your typical licensing fee."

50. Kelly replied that same day, stating that she could send "comparable commercial licenses for Danielle Levitt's work but there are no licenses for the specific images in this matter." However, Kelly never provided the comparable commercial licenses.

51. Instead, on April 26, Moscot received a "Cease and Desist" letter sent by Stephen Doniger of Doniger Burroughs. The letter was based on a template and was not well adapted to the facts of the case. For example, it claimed that Moscot was "displaying" photographs without authorization, even though Moscot had already ceased displaying the Photos. It did not list the allegedly infringing URLs, and, in one of the few places the letter was tailored to Moscot, it misspelled the domain as "moscow.com."

52. On May 1, the parties' attorneys had an initial settlement call to discuss their clients' respective positions, and Doniger agreed to speak with August.

53. On May 15, Moscot's attorney sent Doniger an email "following up on our conversation."

54. Doniger replied that same day with a two-sentence email: "Unfortunately, at this juncture my client's demand is $27k, firm. Let me know if you see an avenue towards settlement or if we should proceed to filing."

55. On May 19, Moscot's attorney sent Doniger a lengthy email describing: (1) Moscot's brief and limited use of the Photos; (2) Moscot's immediate removal of the images; (3) August's failure to provide evidence of license agreements for the same or even comparable photographs; and (4) Moscot's good faith attempts to reach a resolution. The

email concluded with Moscot's offer for the amount originally requested by August—"the full $16,000 fee."

56. Doniger replied that same day with a four-sentence email: "I forwarded your email to my client and just spoke with it. I believe I can get some movement from my client, but the case will not settle in the teens. For this type of commercial use my client does not believe there is anything unreasonable about $9k per image, but I believe I may be able to get this case resolved closer to $8k per image. I appreciate your movement, but I cannot get the case resolved for the $6k per image, inclusive of attorneys' fees, that your client is offering."

57. On May 22, Moscot's attorney sent Doniger an email offering $20,000, "which pays your clients the full $16,000 that they demanded, *plus* $4,000." He explained that this was "an extremely reasonable offer," would "more than cover any fees for time that [Doniger] had put into the case," and that he had no authority to increase the offer further.

58. Doniger replied that same day with a three-sentence email: "Thank you. I just spoke with my client and have absolute bottom-line authority at $24k. If you can get that done I will write it up."

### COUNT I
#### Declaratory Judgment—Copyright Infringement

59. August claims to be the "exclusive administrator, licensing agent, and syndicator of the" Photos.

60. Moscot engaged in conduct that brought it into an adversarial conflict with August. It does not dispute that it used the Photos without obtaining a license from August.

61. August created a real and reasonable apprehension of liability for copyright infringement on the part of Moscot, by sending a cease-and-desist letter claiming that "[i]f we receive no response or a response that does not seem productive towards an amicable resolution, AUGUST will initiate litigation." During negotiations, August's attorney made similar ultimatums: "my client's demand is $27k, firm. Let me know if you see an avenue towards settlement or if we should proceed to filing."

62. Moscot lacks sufficient information to form a belief as to whether August can satisfy the elements of a copyright infringement claim against Moscot. While Moscot does not dispute copying of the Photos, it does not know whether August owns the exclusive rights necessary to maintain an infringement claim.

63. If August can satisfy the elements of a copyright infringement claim, Moscot disputes that its conduct qualifies as willful infringement. A member of Moscot's marketing team mistakenly believed it had the right to use the Photos after finding them online; Moscot promptly removed the Photos from its website before it was even contacted by August; and Moscot offered a more than reasonable settlement—which included the full amount originally demanded by August plus $4,000 for its pre-suit attorney's fees.

64. Moscot also disputes that any actual damages to August would even approach $16,000. That was the amount requested by August, which already included a surcharge of $6,000 – $10,000 in "unauthorized use fees."

65. Not many years ago, August sent similar demand letters seeking damages in the hundreds, not thousands of dollars. August's demands, however, are now many times

higher. But aside from some self-serving declarations and several default judgments, there is no support to back up August's demands.

66. Similar celebrity portraits taken by Danielle Levitt can be licensed from Getty Images. For example, a portrait of Peter Gallagher can be licensed for three months for use on a commercial blog for $110, or for a single marketing email with a circulation up to 100,000 users for $1,590. Those prices are *before* any discounts, which are typically substantial when licensing similar images from the same photoshoot used for related purposes.

67. August's tactics here—demanding $16,000, which included an inflated base license fee *and* a significant penalty for unlicensed use—and then increasing that amount by $11,000, constitutes extortionate behavior. August's original demand was already punitive and excessive, and it dramatically increased the demand merely to punish Moscot for trying to negotiate a reasonable compromise.

68. Moscot is entitled to a declaration whether Moscot is liable to August for copyright infringement, including whether August owns the exclusive rights in the Photos necessary to maintain an infringement claim.

69. Moscot is entitled to a declaration that its conduct does not qualify as willful infringement.

70. Moscot is entitled to a declaration that August's damages, if any, do not exceed $10,000.

### Prayer for Relief

i. Judgment on the claims set forth above.

ii. A declaration whether Moscot is liable to August for copyright infringement, including whether August owns the exclusive rights in the Photos necessary to maintain an infringement claim.

iii. A declaration that Moscot's conduct does not qualify as willful infringement.

iv. A declaration that August's damages, if any, do not exceed $10,000.

v. An award of attorney's fees and costs.

vi. Such other and further relief the Court deems proper.

### Jury Trial Demand

Moscot requests a trial by jury.

Dated: May 28, 2023  
Brooklyn, New York

/s/ Brett E. Lewis  
Brett E. Lewis (BL-6812)  
Lewis & Lin, LLC  
77 Sands Street, 6th Floor  
Brooklyn, NY 11201  
Tel: (718) 243-9323  
Fax: (718) 243-9326  
Brett@ilawco.com

*Attorney for Moscot.com LLC*